# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| RALPH WHEAT, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION 16-0282-WS-B |
| ROGERS & WILLARD, INC., | ) PUBLISH |
| Defendant. | ) |

## ORDER

This matter is before the Court on the defendant's motion for summary judgment. (Doc. 28). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 29, 30, 36, 38, 39, 45), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be denied.

## BACKGROUND

According to the complaint, (Doc. 1), the plaintiff was employed by the defendant as a project manager/estimator until he was terminated at the age of 77. The single claim presented by the plaintiff is that he was terminated on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA").

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats &*

*Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). "Therefore, the plaintiff's version of the facts (to the extent supported by the record) controls, though that version can be supplemented by additional material cited by the defendants and not in tension with the plaintiff's

version." *Rachel v. City of Mobile*, 112 F. Supp. 3d 1263, 1274 (S.D. Ala. 2015), *aff'd*, 633 Fed. Appx. 784 (11th Cir. 2016).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[1] Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited. Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *accord Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014). The Court accordingly limits its review to those arguments the parties have expressly advanced.

"A plaintiff in an ADEA claim may establish a claim of illegal age discrimination through either direct evidence or circumstantial evidence." *Mora v. Jackson Memorial Foundation, Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010) (internal quotes omitted). The defendant argues the plaintiff cannot succeed under either approach; the plaintiff says he can succeed under both methods. The Court agrees with the plaintiff as to the former and therefore does not reach the latter.

The parties agree that the plaintiff was terminated on May 2, 2014, when he was 77 years old, and that Mike Rogers and Steve Willard, the majority owners of the defendant, made the termination decision. (Doc. 29 at 12; Doc. 36 at 7-8).

In May 2013, Rogers attended a conference. His notes from the conference dated May 29, 2013 include the following:

---

[1] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so."). "[A]ppellate judges are not like pigs, hunting for truffles buried in briefs," and "[l]ikewise, district court judges are not required to ferret out delectable facts buried in a massive record …." *Chavez v. Secretary, Florida Department of Corrections*, 647 F.3d 1057, 1061 (11th Cir. 2011) (internal quotes omitted).

- Immediately under the heading, "Attracting and Retaining employees," Rogers wrote, "'Fire all the old people.' Fiat president";
- Next to this statement, Rogers wrote, "many large companies bringing in new bloo[d]";
- Three bullet points later, Rogers wrote, "Older Guys – Ralph & Jerry – Mentor to their replacements – same with Diane";
- Four bullet points later, Rogers wrote, "'Paint' a vision of what company will look like in three years, i.e., new, younger employees …."

(Doc. 39-2 at 3). The parties agree that "Ralph" is the plaintiff.

"For statements of discriminatory intent to constitute direct evidence of discrimination, they must be made by a person involved in the challenged decision." *Bass v. Board of County Commissioners*, 256 F.3d 1095, 1105 (11th Cir. 2001) (internal quotes omitted). The defendant acknowledges that Rogers was a decisionmaker regarding the plaintiff's termination. (Doc. 29 at 12).

"Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). "Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, … constitute direct evidence of discrimination." *Van Voorhis v. Hillsborough County Board of County Commissioners*, 512 F.3d 1296, 1300 (11th Cir. 2008) (internal quotes omitted). Examples of direct evidence of age discrimination, as characterized by the Eleventh Circuit, include the following:

- Decisionmaker stated that "he did not want to interview [any of the applicants] because he didn't want to hire an old pilot";[2]

---

[2] *Van Voorhis*, 512 F.3d at 1298, 1300.

- Decisionmaker stated that when the assistant manager's position came open, "the company would be looking for a person younger than [the plaintiff] to fill it";[3]
- Decisionmaker expressed surprise at longevity of staff members, indicated the hospital needed "new blood" and that he intended to recruit younger doctors and nurses, and commented on the plaintiff's "advanced age";[4]
- A hypothetical memorandum saying, "Fire Earley – he is too old."[5]

The Eleventh Circuit has in addition repeatedly found direct evidence of race or gender discrimination in less precise statements. *See, e.g., Haynes v. W.C. Caye & Co.*, 52 F.3d 928, 930 (11th Cir. 1995) (decisionmaker said he felt women were not tough enough for the job of overseeing collections); *see also Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189-90 (11th Cir. 1997) (collecting cases).[6]

The defendant offers three reasons that Rogers' notes cannot constitute direct evidence of age discrimination in the plaintiff's termination: (1) the notes are too vague, in that they do not say, "Fire Ralph"; (2) Rogers offers an innocent explanation of those notes, which is controlling as to their meaning; and (3) the notes were written almost a year before the plaintiff's termination. (Doc. 45 at 14-15). None of these reasons withstand scrutiny.

---

[3] *Lindsey v. American Cast Iron Pipe Co.*, 772 F.2d 799, 801, 802 (11th Cir. 1985).

[4] *Buckley v. Hospital Corp. of America*, 758 F.2d 1525, 1530 (11th Cir. 1985).

[5] *Earley v. Champion International Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

[6] The Eleventh Circuit has employed the same analysis of direct evidence regardless of the protected category involved. Indeed, while *Merritt* involved direct evidence in a retaliation context, the panel relied on cases discussing direct evidence in the contexts of race, gender and age. 120 F.3d at 1189-90. The defendant as well relies on direct evidence cases involving age, gender, race and religion. (Doc. 45 at 13-14 & nn.22-25).

As the examples cited above reflect, direct evidence is not limited to "fire [the plaintiff], he's too old." In any event, that is exactly what Rogers' notes say: "Fire all the old people," with the plaintiff identified as an "older guy." To "fire all the old people" is to fire them precisely because they are old, and identifying the plaintiff as an "older guy" directly marks him for termination because of his age. There is not the slightest subtlety or ambiguity in this statement, and it falls easily within the "most blatant" of remarks.

The defendant offers Rogers' affidavit for the proposition that he did not really mean what his notes say. He did not really mean the defendant should "fire all the old people" but was only remembering what he had heard spoken in jest by the president of Fiat at an earlier conference. He did not really mean the defendant should "bring in new blood" but was only remembering what he had heard at the earlier conference. He did not really mean he intended to "replace" the plaintiff and other "older guys," only that they should become mentors to younger project managers. And by expressing a three-year "vision" of the defendant with "new, younger employees," he did not mean that older employees should go, only that the defendant should anticipate and prepare for the future. (Doc. 29 at 15-16; Doc. 30-2 at 21-22). The defendant asserts that the plaintiff "has no evidence to rebut" Rogers' explanation of his notes and of his mental state regarding them. (Doc. 45 at 3). Thus, the defendant concludes, Rogers' testimony "provides the true meaning of his notations, which Plaintiff cannot dispute." (*Id*.; *accord id*. at 15).

"Direct evidence is evidence which, *if believed*, proves the existence of a fact without inference or presumption." *Scott v. Suncoast Beverage Sales, Ltd*., 295 F.3d 1223, 1227 (11th Cir. 2002) (emphasis added); *accord Hamilton v. Southland Christian School, Inc*., 680 F.3d 1316, 1320 (11th Cir. 2012). If the jury believes that Rogers wrote, "fire all the old people" and that he identified the plaintiff as an "older guy," that statement alone would entitle the jury to find, without inference or presumption, that the defendant fired the plaintiff because of

6

his age.[7] The defendant proposes that the plaintiff's evidence should not be believed as accurately expressing Rogers' true intent, but whether to believe the evidence is not a proper inquiry at the summary judgment stage.

Of course, "[i]n a direct evidence case, the plaintiff must produce direct testimony that the employer acted with discriminatory motive, *and* must convince the trier of fact to accept the testimony." *EEOC v. Alton Packaging Corp*, 901 F.2d 920, 923 (11th Cir. 1990) (emphasis added). Just as a defendant can offer evidence that its representative did not make the statement constituting direct evidence, it can offer evidence that its representative did not mean what his words on their face reflect. In either situation, if the trier of fact accepts the defendant's version, the plaintiff cannot prevail at trial on a direct evidence theory.

What the defendant suggests, however, is that Rogers' spin on what he wrote prevents the plaintiff from ever reaching the jury on a direct evidence theory. The defendant is mistaken. Just as testimony that the defendant's representative made a statement creates a fact issue for the jury even though the representative denies making the statement,[8] the content of the alleged statement creates a fact issue for the jury as to the representative's intent even though the representative offers an alternative explanation for his words. Indeed, by definition direct evidence consists of statements so stark that the very language they employ admits of no non-discriminatory construction. *Van Voorhis*, 512 F.3d at 1300. Thus, while it is permissible for a defendant to go behind the words to address their context or the author's thought process in expressing them, the jury is not required to accept such self-interested explanations over the plain meaning of the words themselves. As in *Mora*, "[a] reasonable juror could find that [Rogers']

---

[7] The other statements in Rogers' notes may not independently constitute direct evidence, but they echo and bolster the discriminatory intent manifest in "fire all the old people."

[8] *E.g., Dixon v. Hallmark Cos*., 627 F.3d 849, 855 (11th Cir. 2010); *Bass*, 256 F.3d at 1112.

7

statements should be taken at face value and that [the defendant] fired Plaintiff because of [his] age." 597 F.3d at 1204 (vacating entry of summary judgment for the defendant on this basis).

The defendant offers no legal authority for its position that it can obtain summary judgment simply by its decisionmaker's assertion that he did not mean what he wrote – a position which, if accepted, would amount to an automatically successful "just kidding" defense. For reasons stated above, the Court rejects the defendant's unsupported argument.

The defendant's timing argument is foreclosed by *Lindsey v. American Cast Iron Pipe Co.*, 772 F.2d 799 (11th Cir. 1985). On October 1, 1979, the plaintiff asked about an assistant manager position he had heard might be coming open. He was told that, "when the position opened up, the company would be looking for a person younger than [the plaintiff] to fill it." *Id*. at 801. When the assistant manager's position opened up "in the spring of 1981," the company offered the job to a substantially younger employee. *Id*. Even though the only statement at issue was made approximately 1½ years before the adverse employment action, the *Lindsey* Court held that the statement constituted direct evidence. *Id*. at 802. The maximum relevant time gap here is approximately eleven months – from May 29, 2013 to May 2, 2014.[9] Thus, under *Lindsey*, the

---

[9] Because Rogers' notes say, "fire *all* the old people," involuntary separations of other older employees are evidence the defendant acted on that basis and may serve to shorten the relevant time gap. It is uncontroverted that the defendant fired Lillian Dobbs and accepted the coerced resignation of Bill Dobbs (receptionist and superintendent, respectively) in 2013, after the May conference, and non-renewed Jerry Ingle (contractor project manager identified as one of the "older guys" in Rogers' notes) in February 2014. The Dobbses were in their middle to late 60's, and Ingle was 73. (Doc. 38-5 at 12-13; Doc. 38-10 at 21-22, 27, 36). There is thus evidence the defendant began "fir[ing] all the old people" no more than seven months after Rogers' notes. The defendant denies any age discrimination regarding these separations, but for present purposes the significant point is that the defendant began firing the old people within months after Rogers wrote his notes and that it continued doing so until it terminated the plaintiff.

8

plaintiff's direct evidence was not transformed into circumstantial evidence by the lapse of time.

Although uncited by the defendant, the Court is aware of two unpublished appellate decisions that might draw the foregoing conclusion into question. "A biased statement, separate in time from the employment decision under challenge, is not direct evidence of discrimination." *Williamson v. Adventist System/Sunbelt, Inc.*, 372 Fed. Appx. 936, 940 (11th Cir. 2010). "To qualify as direct evidence of discrimination, we require that a biased statement by a decision-maker be made concurrently with the adverse employment event, such that no inference is necessary to conclude that the bias necessarily motivated the decision." *Id*. "In order to constitute direct evidence, the evidence must directly relate in time and subject to the adverse employment action at issue." *Jones v. BE&K Engineering Co.*, 146 Fed. Appx. 356, 358 (11th Cir. 2005). "Because the statements here were made subsequent to the [adverse employment action] and did not refer to statements made during the decision-making process, the statements are not direct evidence of age discrimination." *Id.* at 359. Because timing was the only reason given by either opinion for rejecting the plaintiff's proposed direct evidence, and because both decisions affirmed summary judgment for the defendant, the quoted statements appear to express holdings.[10]

*Jones* and *Williamson* are unpublished. "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Rogers v. Secretary, Department of Corrections*, 855 F.3d 1274, 1278 n.1 (11th Cir. 2017) (internal quotes omitted). To the extent *Jones* and *Williamson* might suggest that the passage of time downgraded Rogers' notes from direct evidence to circumstantial evidence, the Court does not find them persuasive.

---

[10] "The holding of a case comprises both the result of the case and those portions of the opinion necessary to that result." *United States v. Caraballo-Martinez*, 866 F.3d 1233, 1244 (11th Cir. 2017) (internal quotes omitted).

In light of *Lindsey* and other cases, *Williamson*'s declaration that only statements made "concurrently with the adverse employment event" may constitute direct evidence cannot be credited. As noted, the statement in *Lindsey* was uttered approximately 1½ years before the plaintiff was denied promotion. In *Buckley v. Hospital Corp. of America*, 758 F.2d 1525 (11th Cir. 1985), most of the direct evidence consisted of statements made approximately two years before the plaintiff was terminated.[11] In *Bell v. Crackin Good Bakers, Inc*., 777 F.2d 1497 (11th Cir. 1985), the Court found two pieces of direct evidence, the first of which preceded the plaintiff's termination by approximately two years.[12] In *Miles v. M.N.C. Corp*., 750 F.2d 867 (11th Cir. 1985), the direct evidence preceded the denial of recall by perhaps as much as two years.[13] In *Sennello v. Reserve Life Insurance Co*., 872 F.2d 393 (11th Cir. 1989), the statements constituting direct evidence were made "in the weeks and months preceding the demotion and subsequent firing of" the plaintiff. *Id*. at 394-95 (internal quotes omitted).

The *Williamson* panel provided no rationale for its limitation of direct evidence to statements made contemporaneously with the challenged employment decision; instead, it simply cited to *Damon v. Fleming Supermarkets, Inc*., 196 F.3d 1354 (11th Cir. 1999). *Damon*, however, neither states nor supports the proposition for which *Williamson* cited it. The *Damon* Court held only that, where the plaintiff alleged he was terminated because of his age, a statement by the

---

[11] The Eleventh Circuit identified the direct evidence as the new hospital administrator's comments about the staff's longevity, his belief the hospital needed "new blood," his intent to recruit younger doctors and nurses, and the plaintiff's "advancing age." 758 F.2d at 1530. All of these comments but the last were made in 1978; the plaintiff was terminated in late 1980. *Id*. at 1527-29.

[12] Before the decisionmaker became the plaintiff's supervisor in September 1980, he said that, if it were up to him, he would have no women employees; the plaintiff was constructively discharged in July 1982. 777 F.2d at 1499-1501.

[13] In 1978 or 1979, the decisionmaker stated that the company had no blacks because "[h]alf of them weren't worth a shit"; the plaintiff was denied recall between January and June 1980. 750 F.2d at 872, 874-75.

decisionmaker that the company needed "aggressive young men like [the plaintiff's replacement] to be promoted" was not direct evidence because, "[t]hough probative circumstantial evidence of [the decisionmaker's] state of mind, the comment still requires us to infer that [his] interest in promoting young men motivated his decision to terminate [the plaintiff]." *Id.* at 1359 (emphasis omitted). While it noted that the timing of the statement (immediately after the plaintiff's termination) supported the plaintiff's argument that it constituted direct evidence, *id.*, the *Damon* panel in no way suggested that such tight temporal proximity is a prerequisite to a statement being deemed direct evidence. In light of the cases cited above, it could not have done so.

*Williamson* has not been cited in any Eleventh Circuit opinion. While a number of trial courts within the Circuit have cited and/or relied on *Williamson*, the Court's review of them reveals no explanation of or support for *Williamson*'s "concurrently with" restriction on direct evidence.[14] Because it provided no rationale for this restriction, because no other court has done so, and because published Eleventh Circuit decisions are irreconcilable with it, the Court declines to follow *Williamson*.

While *Jones* also addresses the significance of timing in the determination whether a statement constitutes direct evidence, it does so in less precise terms than *Williamson*. Under *Jones*, direct evidence "must directly relate in time … to the adverse employment action at issue." 146 Fed. Appx. at 358. The terminated plaintiff in *Jones* was required to arbitrate his age discrimination claim, and he relied on statements made at the arbitration hearing (and in discovery preceding the hearing) as direct evidence of age discrimination. 146 Fed. Appx. at 357-58.

---

[14] This critique extends to the two previous opinions of this Court citing *Williamson*. *See Bell v. Crowne Management, LLC*, 844 F. Supp. 2d 1222, 1226 (S.D. Ala. 2012); *Woods v. Austal, U.S.A., LLC*, 2011 WL 1380054 at *11 (S.D. Ala. 2011). Neither decision examined, or relied on, the accuracy of *Williamson* in resolving the motions under consideration.

11

The *Jones* panel ruled that, "[b]ecause the statements here were made subsequent to the RIF and did not refer to statements made during the decision-making process, the statements are not direct evidence of age discrimination." *Id*. at 359. *Jones* thus appears to equate "directly relate[d] in time" with "during the decision-making process."[15]

If this is all *Jones* stands for, it is consistent with the Court's ruling; if Rogers' notes are believed by the jury, they reflect a decision to fire the plaintiff and thus were written during the decision-making process.

But *Jones* appears to envision a more specific temporal connection with the adverse employment decision. *Jones* relied on *Standard* and *Scott*, citing *Scott* for the proposition that a statement made over two years before (not after) the adverse employment action was not direct evidence. 146 Fed. Appx. at 358-59. And *Standard* concluded (in a passage uncited by *Jones*) that, "[a]lthough these statements [offered by the terminated plaintiff] may constitute direct evidence of discriminatory intent in refusing to hire production workers *at those times*," they were not direct evidence supporting the plaintiff's case because they required one to "infer that the same discrimination applied to the tooling department positions *at a significantly later date*." *Id*. at 1330-31 (emphasis added). At least two of the three statements relied on by the plaintiff in *Standard* were made over a year before he was terminated.[16]

---

[15] It appears that *Jones* understood *Standard*'s rule that statements constituting direct evidence must be "[r]elated to" the decisionmaking process, 161 F.3d at 1330, as meaning they must be "made during" the decisionmaking process. But a reminiscence by a decisionmaker about how a past decisionmaking process unfolded is most naturally viewed as related to that process. The automatic exclusion of post-decision statements from the realm of direct evidence, as per *Jones*, would prevent even a decisionmaker's *post hoc* explicit admission that her employment decision had been based on a protected characteristic from being deemed direct evidence. It seems doubtful the Eleventh Circuit would embrace such a curious result.

[16] The plaintiff was terminated in late December 1995. 161 F.3d at 1325. One statement was made before the plaintiff was hired in July 1994, and another was made a few months later. *Id*. at 1323-24, 1330. The date of the third statement is not provided.

12

While *Standard* and *Scott* mention timing, neither decision depended on timing for its result. The Eleventh Circuit has recognized that, "when the employer … makes a specific comment in relation to a specific job or promotion, we believe that the value of that comment as direct evidence is limited to a challenge to that specific job or employment decision." *Burrell v. Board of Trustees*, 125 F.3d 1390, 1393 n.7 (11th Cir. 1997) (employer's statement regarding promotion to one job could not be direct evidence regarding termination from a different job). This rule governed both *Standard*[17] and *Scott*[18] and dictated their result regardless of any question about timing.

It is thus not clear that any published Eleventh Circuit decision has ever developed any temporal limitations on the use of direct evidence, and *Lindsey*, *Buckley* and *Bell* establish that, at least when (as here) the statement is sufficiently explicit and sufficiently tied to a particular employment decision, its staying power as direct evidence is measured in years. Neither *Jones*, the cases it cites nor the cases citing it offer any reason to believe otherwise.

"If the plaintiff offers direct evidence and the trier of fact accepts that evidence, then the plaintiff has proven discrimination." *Maynard v. Board of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003). The defendant makes no argument that it can obtain summary judgment despite the plaintiff's direct evidence. (Doc. 45 at 14-15).

Because the plaintiff's direct evidence requires the denial of the defendant's motion, the Court does not consider whether he could also avoid summary

---

[17] *Standard* was captured by this rule because the plaintiff attempted to extrapolate statements regarding hiring in one department to firing in another department. 161 F.3d at 1330.

[18] *Scott* involved a statement by the plaintiff's co-worker (later his supervisor), during a discussion of the plaintiff's absence for jury duty, that "We'll burn his black ass." 295 F.3d at 1227. *Scott* was captured by this rule because the plaintiff attempted to extrapolate to a termination context a statement regarding retaliation for missing work for jury duty.

judgment under a circumstantial evidence theory. *See Merritt*, 120 F.3d at 1191 ("Because we hold that [the plaintiff] has presented sufficient direct evidence to survive summary judgment, we do not address his *McDonnell Douglas* argument and whether he has presented evidence of pretext.").

**CONCLUSION**

For the reasons set forth above, the defendant's motion for summary judgment is **denied**.[19]

DONE and ORDERED this 26th day of September, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[19] The defendant's motion to strike, (Doc. 44), is **denied as moot**, since the Court has not considered the evidentiary materials made the subject of that motion.